IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Criminal Action No. 14-292 |
| v. ) | |
| ) | Judge Cathy Bissoon |
| RAYMONT WRIGHT, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

**<u>MEMORANDUM</u>**

**A. BACKGROUND**

On December 30, 2014, the Defendant, Raymont Wright, was indicted and charged with one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) and 924(e). (Doc. 1). Defendant went to trial on this charge in May 2016. During trial, the government presented the testimony of several law enforcement officers involved in Mr. Wright's arrest. Defendant did not testify or present any witnesses. The jury deliberated for a full day before they declared themselves hopelessly deadlocked. This conclusion came after the Court requested that they continue to deliberate. The Court then declared a mistrial.

In March 2017, Defendant's second trial began before a different jury. The government relied upon the same fact witnesses, and their testimony was substantially identical to their testimony in the first trial. The only noteworthy difference between the two trials was the government's admission of two experts to opine generally about law enforcement's ability to obtain fingerprint and DNA evidence from a firearm, neither of which was recovered in this case. The jury deliberations in the second trial took place over two days. At one point, the jury informed the Court of a deadlock, and the Court instructed the jury to continue deliberating. It

soon became apparent that this jury also was hopelessly deadlocked, and another mistrial was declared.

After the second mistrial, the government noticed its intent to retry Mr. Wright for a third time. The Court then ordered the parties to "file cross-briefs stating their position regarding whether the Court, through an exercise of its inherent authority, should prohibit or permit a second re-trial in this case." (Doc. 124). The parties filed briefing on this issue on March 23, 2017.[1]

**B. ANALYSIS**

The government has tried this case twice in ten months. This Court has now twice declared a mistrial because neither jury could reach a verdict even after the Court encouraged them to deliberate further. The government is now asking for a third bite at the apple. For the reasons stated below, the Court will deny the government's request, and dismiss the Indictment with prejudice, pursuant to its inherent authority.

   1. **The Court's Inherent Authority to Dismiss Indictments Following Multiple Mistrials**

It is well established that the Double Jeopardy Clause of the United States Constitution does not prohibit retrial of a defendant when a prior prosecution for the same offense has ended in a mistrial due to the inability of the jury to agree on a verdict. See United States v. Perez, 22 U.S. 579 (1824) (holding that the genuine inability of the jury to reach a unanimous verdict within a reasonable period constitutes "manifest necessity" for discharge of the jury and permits retrial of the accused). The Court finds, however, that the principles animating the double jeopardy provision are equally applicable to a defendant who faces multiple retrials following a

---

[1] Defendant titled his brief as a "Motion to Bar a Third Trial In the Interest of Justice." (Doc. 128).

mistrial – that is, "[t]he double jeopardy provision was intended to preclude the defendant from being subjected to multiple prosecutions and the consequent increased risk of conviction." U. S. ex rel. Webb v. Court of Common Pleas of Philadelphia Cty., 516 F.2d 1034, 1040 (3d Cir. 1975).

As the United States Supreme Court stated in Green v. United States:

> The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

355 U.S. 184, 187-88 (1957).

Recognizing the risks of allowing multiple trials, the Supreme Court explained in Arizona v. Washington:

> Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted. The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed. Consequently, as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial.

434 U.S. 497, 503-505 (1978).

Here, we have a Defendant who has stood trial not once, but twice, for the same charge. As both parties here recognize, the Court has inherent authority "to effectuate . . . the speedy and orderly administration of justice" and "to ensure fundamental fairness." United States v. Richter, 488 F.2d 170, 173-74 (9th Cir. 1973). Although a retrial in this case may not violate Mr. Wright's constitutional rights under the Double Jeopardy Clause, there certainly is a question as to whether retrying him a third time violates the precepts of "fundamental fairness."

In light of this question, the Court ordered the parties to brief whether it should dismiss the Indictment in this case pursuant to its inherent authority. Notably, in their briefing, neither party has cited to – nor has the Court located – any case law within the Third Circuit holding that a district court may or may not dismiss an indictment following multiple mistrials pursuant to its inherent authority. Accordingly, the Court regards this as a matter of first impression in the Third Circuit, and will look to cases outside the Circuit for guidance.

The parties have identified at least two cases where federal district courts have relied on their inherent authority to dismiss an indictment with prejudice after determining that reprosecution would violate the precepts of fundamental fairness. In <u>United States v. Ingram</u>, 412 F. Supp. 384 (D.D.C. 1976), the court dismissed the indictment after the defendant was tried twice for bank robbery. The court wrote that dismissal of the indictment was:

> simply a matter of fair play. The government has no new proof; it simply wants another chance . . . Apparently, the Government, always a hard loser, simply wishes to keep pressing so long as juries disagree in the hope that a conviction will result . . . .

<u>Id</u>. at 385. Similarly, in <u>United States v. Rossoff</u>, 806 F. Supp. 200, 202-03 (C.D. Ill. 1992), the court dismissed an eight-count indictment with prejudice where it determined that retrial after a second deadlocked jury was fundamentally unfair.

A survey of state court decisions provides additional support for the proposition that a trial court has inherent authority to dismiss an indictment following multiple mistrials. For instance, in <u>State v. Moriwake</u>, 647 P.2d 705 (Haw. 1982), the Hawaii Supreme Court affirmed the dismissal of an indictment for manslaughter by a trial court after two hung jury mistrials. After analyzing the United States Supreme Court's decisions in <u>Perez</u>, <u>Green</u>, and <u>Washington</u>, the Hawaii Supreme Court held that double jeopardy did not bar retrial, but upheld the dismissal of the indictment under the trial court's inherent power. The court balanced the government's

4

interest "against fundamental fairness to a defendant with the added ingredient of the orderly functioning of the court system." Id. at 712. The court stated: "Without suggesting that trial courts are not free, within the bounds of properly exercised discretion, to differ, we proffer that in most cases, serious consideration be given to dismissing an indictment with prejudice after a second hung jury mistrial." Id. at 713.

Likewise, in State v. Abbati, 493 A.2d 513, 517 (N.J. 1985), the New Jersey Supreme Court held that the trial court had inherent authority to bar retrial of kidnapping and aggravated sexual assault charges following two hung juries. The court noted that although principles of double jeopardy may not bar a retrial,

> precepts of fundamental fairness, together with the judiciary's need to create appropriate and just remedies, and its general responsibility to assure the overall efficient administration of the criminal justice system, confirm an inherent power in a trial court to dismiss an indictment with prejudice following general mistrials attributable to repeated jury deadlocks.

Id.

The Tennessee Supreme Court reached a similar conclusion in State v. Witt, 572 S.W.2d 913 (Tenn. 1978). There, the court affirmed a dismissal of an indictment for murder after three mistrials, observing that the trial court had inherent authority to terminate the prosecution in the exercise of sound judicial discretion where repeated, error-free trials resulted in deadlocked juries and the chances for future conviction were unlikely. Id. at 917; see also Sivels v. State, 741 N.E.2d 1197, 1201 (Ind. 2001) ("We agree with the many jurisdictions that hold trial courts have inherent power to dismiss an information with prejudice following mistrials attributable to repeated jury deadlocks, where necessary to uphold guarantees of fundamental fairness and substantial justice.").

Although not binding, the Court finds the analysis in the above cases compelling, especially in light of the Supreme Court's stated concerns regarding the costs of subjecting criminal defendants to multiple trials. The government submits, however, that the above cases are anomalous and that, in fact, "there is no traditional exercise of inherent authority in situations as this, when the government intends to retry a case after two juries have hopelessly deadlocked." (Doc. 126 at 4). The government further argues that Federal Rule of Criminal Procedure Rule 31(b)(3), which states that "the government may retry any defendant on any count on which the jury could not agree," abrogates any inherent authority that this Court would otherwise have to dismiss an indictment following a hung jury mistrial. (Id. at 2).

The Court agrees that Rule 31(b)(3) expressly permits the government to retry a case following a mistrial. However, as defense counsel argues, there is nothing in Rule 31(b)(3) that limits a court's inherent supervisory authority to dismiss an indictment in the interests of fundamental fairness. Indeed, the case that the government cites to support its position, United States v. Wqas Khan, recognizes that, while the express language of Rule 31(b)(3) permits multiple mistrials, a court may still rely on its inherent authority to dismiss an indictment in the interests of justice. 2014 WL 1330681, at *2 (E.D. Cal. Apr. 1, 2014).

The Court further notes that, under the government's analysis, there would be ***no bar whatsoever*** to the government retrying Mr. Wright three, four, or even 50 times, until it finds the magic composition of jurors willing to convict him. Courts do not—and should not—allow for this type of jury shopping, which both "increases the financial and emotional burden on the accused" and increases "the risk that an innocent defendant may be convicted." Washington, 434 U.S. at 503-504; see also United States v. Martin Linen Supply Co., 430 U.S. 564, 570 n.7 (1977) (explaining that an appeal from a post-verdict dismissal of an indictment after a jury

rendered a guilty verdict did not violate double jeopardy principles, noting that "[t]he absence of a threatened second trial mitigates the possibility of governmental jury shopping and substantially reduces the expense and anxiety to be borne by the defendant.").

In short, in the absence of Third Circuit law to the contrary, the Court finds that it has the inherent authority, under some circumstances, to dismiss an indictment following multiple mistrials. Having reached this conclusion, the question then becomes, do the circumstances *in this case* warrant the dismissal of the Indictment against Mr. Wright? The Court turns to this question below.

### 2. **Whether the Balancing of the Factors Warrants Dismissal of the Indictment in this Case**

Courts have considered various factors in determining whether fundamental fairness compels dismissal following several mistrials. In State v. Abbati, for instance, the New Jersey Supreme Court set out the following factors to "govern its ultimate decision whether to dismiss the indictment":

> (1) the number of prior mistrials and the outcome of the juries' deliberations, so far as is known; (2) the character of prior trials in terms of length, complexity, and similarity of evidence presented; (3) the likelihood of any substantial difference in a subsequent trial, if allowed; (4) the trial court's own evaluation of the relative strength of each party's case; and (5) the professional conduct and diligence of respective counsel, particularly of the prosecuting attorney. The court must also give due weight to the prosecutor's decision to reprosecute, assessing the reasons for that decision, such as the gravity of the criminal charges and the public's concern in the effective and definitive conclusion of criminal prosecutions. Conversely, the court should accord careful consideration to the status of the individual defendant and the impact of a retrial upon the defendant in terms of untoward hardship and unfairness.

493 A.2d at 521–22.

The Court finds that the above factors, or such of them as appear relevant to this case, form an appropriate basis for determining whether to dismiss the Indictment against Mr. Wright, and thus will consider each in turn.

    a. <u>The number of prior mistrials and the outcome of the juries' deliberations, so far as is known</u>

First, the court will consider "the number of prior mistrials and the outcome of the juries' deliberations, so far as is known." There have been two mistrials in this case. Undoubtedly, this factor would weigh more heavily towards dismissal if there were ten mistrials. However, as noted, several courts have dismissed indictments with prejudice following two hung juries. See Ingram, 412 F.Supp. at 384; Rossoff, 806 F. Supp. at 202-203; Moriwake, 647 P.2d at 708. Furthermore, although the parties have made representations regarding the breakdown of jury votes in the two trials in this case, the Court will not rely on those representations in its analysis. The Court finds that counsels' post-trial discussions with jurors are unreliable, as evidenced by the disagreement between counsel in this case regarding the final jury counts. (Compare Doc. 128 at 1 (Defendant asserting that: "[i]n the first trial, the jurors voted to acquit (8:4). In the second trial, there was an even split.") with Doc. 135 (government asserting that: "[w]hen the government spoke with the jurors on both occasions, it was the government's understanding that the count at the first trial was 7 to 5 in favor of acquittal, and at the second trial, 8 to 4 in favor of conviction.")). The Court did not poll (either officially or unofficially) the jurors in either trial and thus will not make factual findings regarding how the individual jurors voted. Indeed, the Court questions whether polling the jury regarding how they voted ever is appropriate, given the sanctity of jury deliberations. Given the above, the Court finds that this first factor weighs neither for nor against dismissal.

### b. The character of prior trials in terms of length, complexity, and similarity of evidence presented

Next, the Court will consider "the character of prior trials in terms of length, complexity, and similarity of evidence presented." The Court finds that this factor weighs strongly in favor of dismissal. Excluding the relatively minor differences in the government's case, the trials were virtual duplicates of each other. The government and Mr. Wright were represented by the same attorneys in both trials. As the government acknowledged during its opening statement in the second trial, the case is not complex – did Mr. Wright possess a gun or not? No forensic evidence presented in either trial definitively corroborated the government's version of the events. No videos or photographs exist. Like the defendant in Ingram, Mr. Wright "did not testify at either trial and presented no proof contradicting the Government witnesses. . . ." 412 F. Supp. at 385. Thus, the jury's determination of guilt in each case depended on its evaluation of the credibility of the government's witnesses. Notably, the government has not indicated that it will present any new witnesses or other new evidence at a third trial. Thus, as in Ingram, "[t]he government has no new proof; it simply wants another chance." Id. For these reasons, the second factor weighs in favor of dismissal.

### c. The likelihood of any substantial difference in a subsequent trial, if allowed

Third, the Court will consider "the likelihood of any substantial difference in a subsequent trial, if allowed." As noted, the government has not stated that it intends to offer new evidence at a third trial. Furthermore, there has been no allegation in this case of prior jury bias or nullification. Rather, there is every indication that the two juries engaged in deliberations in good faith, and, despite their best efforts, were unable to reach a verdict. These facts lead the Court to believe that the government has not shown that it would fare any better in a third trial than it did in the first two trials, and thus this factor, too, weighs in favor of dismissal.

d. <u>The trial court's own evaluation of the relative strength of each party's case</u>

The Court next considers "the trial court's own evaluation of the relative strength of each party's case." The Court agrees with the government that there is compelling evidence that Defendant committed the crime with which he has been charged. Nonetheless, the Court finds that this factor should weigh little (if at all) in its ultimate determination. As the <u>Ingram</u> Court explained:

> There is great deference shown jury determinations that result in conviction, and the same attitude should prevail when, as here, members of a jury disagree so conclusively when not even faced with conflicts in the proof. Under the circumstances of this case the verdicts themselves indicate a reasonable doubt in the minds of a substantial majority of the jury members who have heard the evidence. To permit a retrial, after 21 of 24 jurors have already refused to convict, is to ignore the reasonable doubt standard. **The Court in dismissing simply recognized the juries' appraisals of the weight of the evidence. The judgment of the Court or the prosecutor as to the weight of the evidence is, under these circumstances, not entitled to outbalance the obvious.**

412 F. Supp. at 385-386 (emphasis added).

Because two separate juries found that the government did not meet its burden of proof in this case, the Court believes that its own evaluation of the strengths and weaknesses of the case matters very little. For this reason, the Court will not weigh this factor (which militates against dismissal) heavily in its analysis.

e. <u>The professional conduct and diligence of respective counsel, particularly of the prosecuting attorney</u>

Fifth, the Court will consider "the professional conduct and diligence of respective counsel, particularly of the prosecuting attorney." On this point, the Court agrees entirely with defense counsel's statements that:

> The government was represented at the first trial by a competent, experienced counsel, with assistance of an ATF Special Agent. At the second trial, an additional lawyer joined the prosecutorial team. Both lawyers appear regularly before this District Court to prosecute cases individually. The government was

> excellently represented at both trials. Its case was diligently and professionally presented before the jury.

(Doc. 128 at 13-14). Based on these facts, the Court finds that this factor weighs in favor of barring a third trial.

### f. The gravity of the criminal charges and the public's concern in the effective and definitive conclusion of criminal prosecutions

Next, the Court will consider "the gravity of the criminal charges and the public's concern in the effective and definitive conclusion of criminal prosecutions." The crime of being a felon-in-possession, undoubtedly, is a serious offense. However, the Court finds that this offense is far *less* serious than the crimes with which the defendants in other cases where courts granted dismissal were accused. See Ingram, 412 F.Supp. at 384 (bank robbery); Moriwake, 647 P.2d at 708 (manslaughter); Abbati, 493 A.2d at 517 (kidnapping and aggravated sexual assault); Witt, 572 S.W.2d at 913 (murder). Furthermore, the Court finds that "the public's concern in the effective and definitive conclusion of criminal prosecutions" would be best served by a dismissal in this case. Accordingly, the Court finds that this factor weighs in favor of dismissal.

### g. The status of the individual defendant and the impact of a retrial upon the defendant in terms of untoward hardship and unfairness

Finally, the Court will consider "the status of the individual defendant and the impact of a retrial upon the defendant in terms of untoward hardship and unfairness." The government argues that "retrying this case would cause little prejudice to the defendant," since he is out on bond and has appointed defense counsel. Although the Court agrees that the prejudice to Mr. Wright would be greater if he were currently incarcerated and/or paying for a lawyer, it finds that the government's statement that retrial "would cause little prejudice to defendant" trivializes the enormous stress and anxiety a criminal defendant faces when going to trial. In this case, it is

likely that Mr. Wright's anxiety level is particularly high, given that he potentially is facing not one or even two years in prison, but rather a mandatory minimum sentence of 15 years imprisonment if convicted,[2] and, according to his counsel, his mother is ill and he and his partner are expecting a child. Thus, this factor weighs in favor of dismissal.

In sum, the Court finds that, although this is a close case, on balance, the factors supporting dismissal outweigh the government's interest in continuing to prosecute this case.

### 3. **Whether the Court Should Dismiss the Indictment With or Without Prejudice**

In its briefing, the government asks, "[e]ven if this court were inclined to dismiss the case, the government respectfully requests that dismissal be without prejudice." (Doc. 126 at 9 n.8). The Court will deny the government's request. A dismissal without prejudice, presumably, would allow the government to reopen its case against Mr. Wright at some point in the future. However, as discussed above, the Court finds that Defendant's interest in finality outweighs the government's interest in continuing its prosecution. Accordingly, the Court will dismiss the Indictment against Defendant with prejudice.

* * *

The Court does not reach this decision lightly and well recognizes that this outcome may beg for appellate scrutiny given the dearth of law in this Circuit. If this Court's assessment of the issues is found to be incorrect, then its decision will be reversed and the government will have its prosecution. If, however, the Court's assessment is the correct one, but the Court allows this trial to go forward for fear of reversal or because the case law is not as fully developed as the

---

[2] The government argues that, if convicted, Mr. Wright would be deemed an armed career criminal under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). (Doc. 111).

Court would prefer, the Court risks doing a disservice to justice and a potentially irreversible injustice to Mr. Wright.

## **ORDER**

For the foregoing reasons, the Court hereby DISMISSES the Indictment against Defendant with prejudice.

March 30, 2017                                     s/Cathy Bissoon
                                                   Cathy Bissoon
                                                   United States District Judge

cc (via ECF email notification):

All Counsel of Record